UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TAMEL JOHNSON,<br><br>        Plaintiff,<br><br>   v.<br><br>RALLOS, et al.,<br><br>        Defendants. | No. 2:11-cv-0369 GEB AC P<br><br><br>ORDER &<br><br>FINDINGS AND RECOMMENDATIONS |

      Plaintiff is a prisoner proceeding pro se who seeks relief pursuant to 42 U.S.C. § 1983. Pending before the court is defendant Hsieh's motion for summary judgment. The motion has been fully briefed.

PLAINTIFF'S ALLEGATIONS

      This case proceeds on a single claim in plaintiff's verified third amended complaint, alleging that defendant Hsieh provided inadequate medical care in violation of the Eighth Amendment. ECF No. 18. All other defendants in this action have been dismissed. ECF Nos. 20, 35.[1]

---

[1] Plaintiff's motion for reconsideration of the order dismissing the other defendants was denied. ECF No. 62.

On June 3, 2008, plaintiff was seen by defendant Hsieh regarding back and knee pain. Plaintiff alleges that defendant Hsieh was his was his primary care doctor. On June 6, 2008, an x-ray was taken pursuant to Dr. Hsieh's order. Plaintiff was seen by a different physician on June 19, 2008 and on September 22, 2008; the x-ray results were unavailable. However, a physical examination on September 22nd apparently revealed "no significant internal pathology." Third Amended Complaint (TAC), ECF No. 18 at 7-8.

Plaintiff continued to complain of pain in his left knee. His x-rays could not be found so a new x-ray was ordered on August 28, 2009 and taken on September 10, 2009, nearly a year later. Plaintiff at some point was provided pain medication, and an MRI of plaintiff's knee was performed on June 9, 2010 which revealed the source of plaintiff's pain. Surgery was recommended and plaintiff's subsequent medical care has been appropriate. Id. at 8-9.

## MOTION FOR SUMMARY JUDGMENT

Defendant Hsieh moves for summary judgment on the following grounds: 1) the undisputed facts show that he did not provide medical care that violated plaintiff's Eighth Amendment rights; 2) he is entitled to qualified immunity; 3) plaintiff is not entitled either to punitive damages or injunctive relief. ECF No. 63. Plaintiff opposes the motion, arguing that defendant failed to follow up on x-rays that defendant ordered and did not make sure that plaintiff was provided the lower bunk/lower tier/no triple bunk accommodations that defendant granted. Plaintiff contends that Dr. Hsieh's failure to follow up on these matters demonstrates his deliberate indifference to plaintiff's serious knee injury and pain. ECF No. 70.

I. Legal Standard for Rule 56 Motions

Summary judgment is appropriate when the moving party "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a).

Under summary judgment practice, the moving party "initially bears the burden of proving the absence of a genuine issue of material fact." In re Oracle Corp. Securities Litigation, 627 F.3d 376, 387 (9th Cir. 2010) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 323, (1986)). The moving party may accomplish this by "citing to particular parts of materials in the record,

including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admission, interrogatory answers, or other materials" or by showing that such materials "do not establish the absence or presence of a genuine dispute, or that the adverse party cannot produce admissible evidence to support the fact." Fed.R.Civ.P. 56(c)(1)(A), (B). When the non-moving party bears the burden of proof at trial, "the moving party need only prove that there is an absence of evidence to support the nonmoving party's case." Oracle Corp., 627 F.3d at 387 (citing Celotex, 477 U.S. at 325.); see also Fed.R.Civ.P. 56(c)(1)(B). Indeed, summary judgment should be entered, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. See Celotex, 477 U.S. at 322. "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Id. In such a circumstance, summary judgment should be granted, "so long as whatever is before the district court demonstrates that the standard for entry of summary judgment . . . is satisfied." Id. at 323.

If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually does exist. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). In attempting to establish the existence of this factual dispute, the opposing party may not rely upon the allegations or denials of its pleadings but is required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery material, in support of its contention that the dispute exists. See Fed.R.Civ.P. 56(c)(1); Matsushita, 475 U.S. at 586 n. 11. The opposing party must demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome of the suit under the governing law, see Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Assoc., 809 F.2d 626, 630 (9th Cir.1987), and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could return a verdict for the nonmoving party, see Wool v. Tandem Computers, Inc., 818 F.2d 1433, 1436 (9th Cir.1987).

In the endeavor to establish the existence of a factual dispute, the opposing party need not

establish a material issue of fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." T.W. Elec. Serv., 809 F.2d at 631. Thus, the "purpose of summary judgment is to 'pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'" Matsushita, 475 U.S. at 587 (citations omitted).

"In evaluating the evidence to determine whether there is a genuine issue of fact," the court draws "all reasonable inferences supported by the evidence in favor of the non-moving party." Walls v. Central Costa County Transit Authority, 653 F.3d 963, 966 (9th Cir. 2011). It is the opposing party's obligation to produce a factual predicate from which the inference may be drawn. See Richards v. Nielsen Freight Lines, 602 F.Supp. 1224, 1244–45 (E.D.Cal.1985), aff'd, 810 F.2d 898, 902 (9th Cir.1987). Finally, to demonstrate a genuine issue, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts.... Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" Matsushita, 475 U.S. at 587 (citation omitted).

In applying these rules, district courts must "construe liberally motion papers and pleadings filed by pro se inmates and . . . avoid applying summary judgment rules strictly." Thomas v. Ponder, 611 F.3d 1144, 1150 (9th Cir. 2010). Plaintiff has been provided notice of the requirements for opposing a motion pursuant to Rule 56 of the Federal Rules of Civil Procedure, as required by Rand v. Rowland, 154 F.3d 952, 957 (9th Cir. 1998) (en banc), Klingele v. Eikenberry, 849 F.2d 409 (9th Cir.1988), and Woods v. Carey, 684 F.3d 934 (9th Cir. 2012). ECF Nos. 22, 63-1.

II. Undisputed Facts

The record reveals the following facts to be undisputed:

- Plaintiff was an inmate in the custody of the California Department of Corrections and Rehabilitation (CDCR) at California State Prison-Solano (CSP-Sol) at all times relevant to his claims against Defendant Hsieh. Motion for Summary

Judgment (MSJ), Declaration of Deputy Attorney General T. Heath, ECF No. 63-6, Exhibit B at 14,[2] plaintiff's chronological history [from Feb. 19, 2008 through Dec. 5, 2011].

- Defendant Hsieh, a physician and surgeon employed by CDCR since June 2006, has been employed at CSP-Sol for the entire time of his employment with CDCR through the present.  MSJ, Declaration of K. Hsieh, ECF No. 63-5, at ¶ 1.

- Plaintiff was transferred to North Kern State Prison (NKSP) on February 19, 2008[3] and from NKSP to CSP-Sol on or about May 20, 2008.  TAC, ECF No. 18, at ¶¶ 5, 7 and Ex. C at 36 (copy of interdisciplinary new arrival progress note); MSJ, Heath Dec., ECF No. 63-6, Ex. B at 14; see also, plaintiff's Deposition, 36:10-11.

- Plaintiff's weight has remained around 387 pounds from February 2008 until the present.[4]  ECF No. 18 at ¶ 5; ECF No. 63-6, Ex. C, [excerpts from] plaintiff's Dep., 29:18-25.[5]

- Before his arrival at CSP-Sol, plaintiff's doctors had informed him his obesity was a disease which causes high blood pressure, diabetes, places weight on his joints and knees and stresses his legs, telling him that he needs to lose weight.  ECF No. 63-6, Ex. C, 30:4-25.

- At NKSP, plaintiff had been housed on a lower bunk due to his obesity and had been issued a "permanent lower bunk" comprehensive accommodation chrono on February 21, 2008, approved on February 22, 2008.  ECF No. 18 at ¶¶ 5-6, Ex. B at 33.

- Upon plaintiff's arrival at CSP-Sol, defendant Dr. Hsieh did not conduct plaintiff's

---

[2] The court's electronic pagination system is referenced.
[3] Although in his verified complaint plaintiff alleges he was transferred from CSP-Sol to NKSP then back to CSP-Sol, in his deposition plaintiff testifies that before he was transferred to NKSP [in February 2008], he had been "in the county jail."  Plaintiff's Dep. 23:9-14.
[4] At the time of the deposition, plaintiff specifically testified that his then-current weight was 374 pounds.  Plaintiff's Dep. 30:2-3.
[5] References to plaintiff's deposition adhere to the pagination within the deposition itself, whether in defendant's exhibit or in testimony from the entire deposition not exhibited.

    medical intake.  Plaintiff was assigned to a triple bunk upper bunk.  Defendant Hsieh did not know about plaintiff's housing assignment and was not the doctor responsible for completing plaintiff's review for housing accommodations when he arrived at CSP-Sol.  ECF No. 18 at ¶ 7; ECF No. 63-5 at ¶¶ 10-12; ECF No. 63-6, Ex. C, 32:10-23; plaintiff's Dep. 37:2-7, 38:1-7.

- Defendant Hsieh can complete a comprehensive accommodation chrono for certain accommodations to be made in an inmate's housing assignment if medically necessary, but does not have the authority to actually make inmate housing placements.  ECF No. 63-5 at ¶ 6.
- Plaintiff fell off his assigned bunk and struck his knee on the middle bunk.  ECF No. 18 at ¶ 14; ECF No. 63-6, Ex. C, 38:14-19, 48:14-17, 48:23-24.
- Plaintiff hit the middle of his kneecap, heard a pop and felt a burning pain.  He thought his knee would sting for a minute and then he would be all right, but that was not the case.  ECF No. 63-6, Ex. C, 39:22-25; 40:15-24.
- Plaintiff was seen for his knee by a medical technical assistant (MTA) some hours after he hurt it.  He told the MTA that he fell off his bunk, had hit and hurt his right knee and asked to see a doctor.  He answered the MTA's questions and the MTA referred him to a doctor.  ECF No. 63-6, Ex. C, 41:12-24, 42:1-5, 24.)
- On June 3, 2008, defendant Hsieh had an appointment with plaintiff in the primary care clinic. ECF No. 18 at ¶ 15; ECF No. 63-5 at ¶10; ECF No. 63-6, Heath Dec. ¶ 3, Ex. A, authentication of plaintiff's medical/health records at 4, and physician's orders/interdisciplinary progress notes for June 3, 2008 at 5-6; ECF No. 63-6, Ex. C, 48:6-17, 48:23-24.
- The first time defendant Hsieh examined plaintiff or provided him with medical care was June 3, 2008.  Prior to his examination, defendant had no knowledge of plaintiff's knee pain or medical history.   ECF No. 63-5 at ¶ 11; ECF No. 63-6, Ex.

6

C, 96:4-6.[6]

- Defendant Hsieh declares that he completed a comprehensive examination of plaintiff on June 3, 2008, showing mostly normal results. Dr. Hsieh avers that plaintiff reported feeling okay, and did not report any chest pain, nausea, vomiting, fever or chills, abdominal pains, or cough. His blood pressure was a little bit high but, other than his obesity, his vital signs were normal. An examination of his head, ears, nose, throat, eyes, mouth, and neck was normal. His lungs were clear, his cardiac rate and rhythm were normal, and his abdomen, skin, and extremities were normal. ECF No. 63-5 at ¶ 13; ECF No. 63-6, Ex. A at 5-6.

- Medical records reveal that during the June 3, 2008 examination it was noted that plaintiff experienced pain on flexion and extension of his right knee. Defendant Hsieh declares that these symptoms caused him to initiate an examination and work-up of his knee which revealed that plaintiff had full range of motion and could flex and extend his knee. He conducted a test to check the ACL (anterior cruciate ligament) and the stability of the knee on flexion and extension which had normal results, indicating that at that time the knee was most likely stable. ECF No. 18 at ¶ 15; ECF No. 63-6 at ¶ 14; ECF No. 63-5, Ex. A at 5-6 and Ex. C, *46:15-47:7.*

- Dr. Hsieh ordered an x-ray of plaintiff's knee which was taken three days later on June 6, 2008. ECF No. 18 at ¶ 16; ECF No. 63-5 at ¶ 15; ECF No. 63-5, Ex. A at 5-7 and Ex. C, 47:7-8, 56:21-57:1, 97:14:14-21.

- Defendant Hsieh declares that at that time, x-ray results were not immediately available after they had been taken. Results had to be mailed back to CSP-Sol before they could be reviewed and analyzed by CSP-Sol staff for follow-up

---

[6] Although plaintiff testified at an earlier point in his deposition that he had seen defendant Hsieh prior to June 3, 2008 for his knee pain, see plaintiff's Dep. 45:2-46:9, plaintiff also indicates that he cannot remember the day and that the defendant could clarify the point. Later, as noted above, he indicates that he first saw defendant Hsieh on June 3, 2008.

7

treatment. ECF No. 63-5 at ¶ 16.

- The radiology report regarding the June 6, 2008 x-ray set forth the following findings: "Increased density is evident in the suprapatellar bursa consistent with an effusion. No fracture or dislocation." ECF No. 18 at ¶ 16 and Ex. E at 54; ECF No. 63-5, Ex. A at 7.
- Defendant Hsieh, on June 3, 2008, also treated plaintiff for other medical issues. He ordered tests to check for problems associated with plaintiff's obesity, prescribed a new higher dose of blood pressure medication, and gave plaintiff a card to get his blood pressure checked. He also prescribed vitamins, antibiotics for a skin condition, Benadryl for plaintiff's allergies and recommended exercise for plaintiff to the extent tolerable and a low sodium, low-fat diet. ECF No. 63-5 at ¶ 17; ECF No. 63-6, Ex. A at 5-6.
- Defendant scheduled plaintiff for a sixty-day follow-up appointment with a doctor. ECF No. 63-5 at ¶ 17; ECF No. 63-6 at 5-6.
- Medical records indicate that defendant Hsieh ordered a lower bunk accommodation chrono for plaintiff. ECF No. 63-5 at ¶ 18; ECF No. 63-6 , Ex. A, at 5-6.
- Plaintiff concedes that an order for a comprehensive accommodation chrono was issued but attests that he neither received it nor was he accommodated in his housing assignment as called for in the chrono. ECF No. 18 at ¶ 15.
- Plaintiff filed an Inmate/Parolee Appeal Form 602 on June 3, 2008, the same day as defendant Hsieh's examination, requesting a lower bunk/lower tier and no triple-bunk. ECF No. 18 at ¶ 15 and Ex. D at 39; ECF No. 63-5, Ex. C, 51:5-7, 13-19; ECF No. 63-4, Declaration of N. Clark, CSP-Sol inmate appeal coordinator and Ex. D.
- On June 19, 2008, defendant Hsieh conducted an informal review of plaintiff's appeal, confirmed that plaintiff had been seen on June 3, 2008, and granted plaintiff a lower tier, no triple-bunk chrono. This chrono was in addition to the

    lower bunk chrono previously granted on June 3, 2008.  ECF No. 18, Ex. F at 56-57; ECF No. 63-5 at ¶ 20; ECF No. 63-6, Ex. A, at 9-10; ECF No. 63-4, Ex. D.[7]

- Plaintiff did not receive the accommodation chrono that was written on June 19, 2008.  Plaintiff's Dep. 89:19-90:18.
- Defendant Hsieh declares that he could not do more than complete the accommodation chrono for plaintiff on June 19, 2008, after which the chrono was forwarded to be approved by the Health Care Manager or Chief Medical Officer.  The chrono is dated as having been approved on June 24, 2008.  ECF No. 63-5 at ¶¶ 20-21; ECF No. 63-6, Ex. A, at 10.
- Correctional [custody] staff had the authority and responsibility to make the proper housing assignment.  ECF No. 63-5 at ¶ 21; ECF No. 63-6, Ex. C, 90:19-91:2.
- Defendant Hsieh did not know about plaintiff's triple bunk housing assignment prior to June 3, 2008 and was never made aware by plaintiff or anyone else, once he had completed the accommodation chrono for plaintiff, that plaintiff did not receive a housing assignment that satisfied the accommodation he had granted.  ECF No. 63-5 at ¶¶ 12, 23.
- When he saw medical staff after the June 6, 2008 x-rays had been taken, plaintiff was told they could not be found.  Plaintiff's Dep. 64:24-65:21.
- Prior to this lawsuit, defendant Hsieh was never made aware that the original x-ray had been lost or delayed.  ECF No. 63-5 at ¶ 25.  Disputed: ECF No. 63-6, Ex. C, 19-22.
- A second set of x-rays was taken more than a year after the first set, on or about September 10, 2009, and revealed mild degenerative changes but not fractures or dislocation.  Plaintiff's Dep. 65:25-66:23.

---

[7] Although plaintiff has stated that Dr. Basi conducted the informal level appeal response on June 19, 2008 and ordered the Comp. Accomm. Chrono (ECF No. 18 at ¶ & Ex. F at 57; plaintiff's Dep. 58:5-24, 60:2-8), plaintiff's own exhibit F (at 57) shows Dr. Hsieh's name on the 6/19/08 copy of "Physician's Orders."

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

- For individuals presenting with knee pain, the standard of care is to review the patient's medical history and symptoms, to conduct a physical examination to determine whether the knee is stable or sustained ligament damage, and to rule out any life threatening or emergency conditions. If tests indicate it, the physician may wish to order an x-ray to rule out severe arthritis, fracture, and dislocation. ECF No. 63-5 at ¶ 29.
- Following defendant Hsieh's June 3, 2008 examination of plaintiff and his June 19, 2008 informal review of plaintiff's appeal, he was never informed that plaintiff continued to experience pain, was dissatisfied with the treatment that he received, or that he had any additional or continuing medical problems. ECF No. 63-5 at ¶ 26; ECF No. 70, plaintiff's Opposition at 7.
- No doctor has ever told plaintiff that defendant Hsieh should have given him additional treatment nor has any doctor told plaintiff that he suffered additional harm because of treatment he received from the defendant. ECF No. 63-6, Ex. C, 91:5-8, 91:14-17.
- Although it is plaintiff's opinion that he should have received other care, no doctor has told him that he should have had an MRI or surgery sooner than he did. ECF No. 63-6, Ex. C, 81:14-17, 22-25, 86:3-15, 91:18-21.
- The treatment plaintiff wanted from defendant Hsieh was an x-ray to find out what was wrong with his knee and a chrono. ECF No. 63-6, Ex. C, 96:16-97:1.
- After Dr. Hsieh's examination and informal response to plaintiff's grievance in June of 2008, plaintiff's medical care was provided by other medical staff, and defendant Hsieh was not involved in that treatment. ECF No. 18 at ¶¶ 18-26; ECF No. 63-5 at ¶¶ 20-21, 27.
- Plaintiff was prescribed pain medication but found it ineffective; he evidently received more effective pain meds at some point from a Dr. Shadday. Plaintiff's Dep. 69-70; 67:16-68:4.
- An MRI was ordered on June 9, 2010 for plaintiff's knee, indicating, inter alia,

"complex multidirectional tearing in the medial meniscus." ECF No. 18 at ¶ 26 & Ex. H at 61-63.

- On December 13, 2010, a physician at Doctors Hospital of Manteca, John Casey, recorded that he recommended that plaintiff "lose at least 40 pounds prior to proceeding with any operative intervention." ECF No. 18 at 75, 77.
- Dr. Casey performed plaintiff's right knee surgery on May 20, 2011. ECF No. 18 at 80-88.

III. Facts in Dispute

- Defendant Hsieh declares that when he provided plaintiff with medical care he was not plaintiff's "primary care physician" and was on rotation between the different treatment areas in CSP-Sol. ECF No. 63-5 at ¶ 22. He further attests he did not have a list of inmate patients for whom he was responsible in a primary care model. When he treated an inmate, he would not necessarily treat the inmate again in the future or in any scheduled follow-up appointment. Id. Rather, according to defendant Hsieh, the inmate would be treated by another doctor or other medical staff. Id. Plaintiff insists that defendant Hsieh was his "primary care physician." ECF No. 18 at ¶ 15.
- Defendant Hsieh declares that he was not responsible for x-rays being performed after having been ordered, or for the delivery of the results and originals to CSP-Sol medical staff. ECF No. 63-5 at ¶ 25. Plaintiff contends that defendant Hsieh was responsible for ascertaining the return and review of the original x-ray results and testified that if defendant Hsieh and other doctors had not dropped the ball, he would not have had to wait for three years for surgery and have had to walk around in pain during that time. He should have received a top bunk. X-rays should have been re-taken [sooner]. Plaintiff's Dep. 87:3-88:8.
- Defendant Hsieh declares that he could do nothing more with regard to plaintiff's housing assignment than complete the comprehensive accommodation chronos for lower tier, no triple bunk and lower bunk chrono. ECF No. 63-5 at

11

¶¶ 20-21. It is plaintiff's position that he did not personally receive the chronos and that he did not obtain the housing assignment the chronos authorized which demonstrates defendant Hsieh's deliberate indifference. Plaintiff's Dep. 87:3-88:8; ECF No. 70.

IV. Governing Eighth Amendment Principles

In order to state a §1983 claim for violation of the Eighth Amendment based on inadequate medical care, plaintiff must allege "acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." Estelle v. Gamble, 429 U.S. 97, 106 (1976). To prevail, plaintiff must show both that his medical needs were objectively serious, and that defendants possessed a sufficiently culpable state of mind. Wilson v. Seiter, 501 U.S. 294, 299 (1991); McKinney v. Anderson, 959 F.2d 853 (9th Cir. 1992). The requisite state of mind for a medical claim is "deliberate indifference." Hudson v. McMillian, 503 U.S. 1, 5 (1992).

A serious medical need exists if the failure to treat a prisoner's condition could result in further significant injury or the unnecessary and wanton infliction of pain. Indications that a prisoner has a serious need for medical treatment are the following: the existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individual's daily activities; or the existence of chronic and substantial pain. See, e.g., Wood v. Housewright, 900 F. 2d 1332, 1337-41 (9th Cir. 1990) (citing cases); Hunt v. Dental Dept., 865 F.2d 198, 200-01 (9th Cir. 1989). McGuckin v. Smith, 974 F.2d 1050, 1059-60 (9th Cir. 1992), overruled on other grounds, WMX Technologies v. Miller, 104 F.3d 1133 (9th Cir. 1997) (en banc).

In Farmer v. Brennan, 511 U.S. 825 (1994), the Supreme Court established a very demanding standard for "deliberate indifference." Negligence is insufficient. Farmer, 511 U.S. at 835. Even civil recklessness (failure to act in the face of an unjustifiably high risk of harm which is so obvious that it should be known) is insufficient to establish an Eighth Amendment violation. Id. at 836-37. It not enough that a reasonable person would have known of the risk or that a defendant should have known of the risk. Id. at 842. Rather, deliberate indifference is established only where the defendant *subjectively* "knows of and disregards an *excessive risk* to

inmate health and safety." Toguchi v. Chung, 391 F.3d 1051, 1057 (9th Cir. 2004) (internal citation omitted) (emphasis added).

A physician need not fail to treat an inmate altogether in order to violate that inmate's Eighth Amendment rights. Ortiz v. City of Imperial, 884 F.2d 1312, 1314 (9th Cir. 1989). A failure to *competently* treat a serious medical condition, even if some treatment is prescribed, may constitute deliberate indifference in a particular case. Id. However, mere differences of opinion concerning the appropriate treatment cannot be the basis of an Eighth Amendment violation. Jackson v. McIntosh, 90 F.3d 330 (9th Cir. 1996); Franklin v. Oregon, 662 F.2d 1337, 1344 (9th Cir. 1981).

A finding that an inmate was seriously harmed by the defendant's action or inaction tends to provide additional support for a claim of deliberate indifference; however, it does not end the inquiry. McGuckin, 974 F.2d 1050, 1060 (9th Cir. 1992). In summary, "the more serious the medical needs of the prisoner, and the more unwarranted the defendant's actions in light of those needs, the more likely it is that a plaintiff has established deliberate indifference on the part of the defendant." McGuckin, 974 F.2d at 1061.

### A. *Defendant's Objections and Motion to Strike*

Defendant points out accurately that plaintiff in his opposition has not filed a document disputing defendant's statement of undisputed facts, nor has he filed a separate statement of disputed facts. ECF No. 74, defendant's objections and motion to strike plaintiff's evidence in opposition to motion for summary judgment; see also, ECF No. 73, defendant's reply, at 2. Defendant is correct that plaintiff has failed to comply with Fed. R. Civ. P. 56 56(c)(1)(A), which requires that "a party asserting that a fact . . . is genuinely disputed must support the assertion by . . . citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations, . . . admissions, interrogatory answers, or other materials . . . ." ECF No. 73, defendant's reply, at 2. He has also not followed Local Rule 260(b), which requires that any party in its opposition to a motion for summary judgment:

> shall reproduce the itemized facts in the Statement of Undisputed

> Facts and admit those facts that are undisputed and deny those that are disputed, including with each denial a citation to the particular portions of any pleading, affidavit, deposition, interrogatory answer, admission, or other document relied upon in support of that denial.

Local Rule 260 (b) also states, in relevant part, that:

> [t]he opposing party may also file a concise 'Statement of Disputed Facts,' and the source thereof in the record, of all additional material facts as to which there is a genuine issue precluding summary judgment or adjudication. The opposing party shall be responsible for the filing of all evidentiary documents cited in the opposing papers. See L.R. 133(j).

(i) *Applicable Standard*

It is well-established that the pleadings of pro se litigants are held to "less stringent standards than formal pleadings drafted by lawyers," Haines v. Kerner, 404 U.S. 519, 520 (1972) (per curiam). Nevertheless, "[p]ro se litigants must follow the same rules of procedure that govern other litigants." King v. Atiyeh, 814 F.2d 565, 567 (9th Cir. 1987), overruled on another ground by Lacey v. Maricopa County, 693 F.3d 896 (9th Cir. 2012) (en banc). While non-prisoner pro se litigants should not be treated more favorably than parties represented by attorneys, unrepresented prisoners' choice to proceed without counsel "is less than voluntary" and they are subject to the "handicaps. . .detention necessarily imposes upon a litigant" . . . . such as "limited access to legal materials" as well as "sources of proof." Jacobsen v. Filler, 790 F.2d 1362, 1364-65 & n. 4 (9th Cir.1986)). Inmate litigants, therefore, should not be held to a standard of "strict literalness" with respect to the requirements of the summary judgment rule. Id. The court is mindful of the Ninth Circuit's more overarching caution in this context, as noted above, that district courts are to "construe liberally motion papers and pleadings filed by pro se inmates and . . . avoid applying summary judgment rules strictly." Thomas v. Ponder, 611 F.3d at 1150.

Accordingly, the court considers the record before it in its entirety (to the extent feasible) despite plaintiff's failure to be in strict compliance with the applicable rules. Defendant's motion to strike is therefore denied in part. To the extent that plaintiff makes assertions in his opposition for which he supplies no evidentiary support, and none is readily identifiable elsewhere in the record, the motion is granted.

14

V.       Analysis

The only genuine factual dispute between the parties involves defendant Hsieh's alleged role as plaintiff's "primary care doctor," and the related question for which this disputed designation appears to be shorthand: whether Dr. Hsieh had the responsibility and the ability to ensure (1) that x-rays he ordered were reviewed in a timely fashion by the appropriate medical personnel, and (2) that custodial staff implemented the chronos he issued to accommodate plaintiff's medical condition. This dispute is not material. Even if Dr. Hsieh had the duty or ability to follow up, his failure to do so would not support an inference of any state of mind more culpable than negligence.

"[A] complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. Medical malpractice does not become a constitutional violation merely because the victim is a prisoner." Estelle v. Gamble, 429 U.S. at 106; see also Jett v. Penner, 439 F.3d 1091, 1096 (9th Cir. 2006) (isolated occurrences of neglect do not constitute deliberate indifference to serious medical needs); Toguchi v. Chung, 391 F.3d at 1060 (stating that "[d]eliberate indifference is a high legal standard."); Clement v. Gomez, 298 F.3d 898, 904 (9th Cir. 2002) ("[m]ere negligence in insufficient for liability"); Lopez v. Smith, 203 F.3d 1122, 1131 (9th Cir. 2000) (en banc) ("[m]ere negligence in diagnosing or treating a medical condition, without more, does not violate a prisoner's Eighth Amendment rights' [internal quotation/citation omitted]); Frost v. Agnos, 152 F.3d 1124, 1130 (9th Cir. 1998) (accord); Anderson v. County of Kern, 45 F.3d 1310, 1316 (9th Cir. 1995) ("indifference to medical needs must be substantial; a constitutional violation is not established by negligence. . . .").

Plaintiff has identified no facts suggesting that defendant Hsieh provided anything other than appropriate care on June 3, 2008. It is undisputed that plaintiff arrived at CSP-Sol from NKSP on May 20, 2008 with a comprehensive accommodation chrono assigning him to a lower bunk, and that intake officials and housing assignment staff at CSP-Sol failed to follow that chrono despite plaintiff's size and weight. It is also undisputed that defendant Dr. Hsieh had no involvement in this housing assignment. Before plaintiff hurt his knee falling from a top bunk

sometime prior to June 3, 2008, he had no contact with Dr. Hsieh.  On June 3 Dr. Hsieh issued a lower bunk chrono, evaluated plaintiff's knee to determine its stability, and ordered an x-ray.  No violation of the standard of care is arguably evinced by these facts.  Although the parties do not dispute that Dr. Hsieh issued the lower bunk chrono (or that plaintiff received neither a copy of the chrono nor the accommodation it required), no copy of that document has been produced and it is unclear that one was ever processed to custody officials.  As previously noted, even if it had been Dr. Hseih's responsibility to ensure proper processing and compliance with the chrono, no jury could find deliberate indifference on that basis alone.  The appropriate care that was provided on June 3, together with Dr. Hsieh's conclusion upon examining plaintiff's knee that it was stable, weighs powerfully against any such inference.[8]

Plaintiff has also produced no evidence that Dr. Hseih's actions of June 19, 2008, were anything other than medically appropriate.  Upon learning from plaintiff's inmate appeal that plaintiff had not been properly accommodated, defendant spoke with plaintiff and issued a comprehensive accommodation chrono for a lower tier lower bunk in addition to the earlier lower bunk chrono he had written on June 3, 2008.

Plaintiff acknowledges that defendant was not deliberately indifferent in provding medical care or responding to the inmate appeal.  He nonetheless argues vehemently that defendant acted with deliberate indifference in failing to obtain the original x-ray results and by failing to ascertain that plaintiff had been provided the accommodations that were ordered.  ECF No. 70, Opposition, at 4-8.  The undisputed facts do not support a conclusion that Dr. Hsieh acted with the mental state necessary to establish an Eighth Amendment violation.  The defendant's actions on June 3 and June 19, 2008 reflect appropriate concern for and response to plaintiff's knee injury.  On those occasions Dr. Hsieh provided precisely the care that plaintiff wanted.  Plaintiff points to no evidence that Dr. Hsieh knew after June 19, 2008 that the x-rays had been lost or the chronos disregarded.  In this context, no jury could find that defendant acted with deliberate

---

[8] Having found plaintiff's knee to be stable, Dr. Hseih cannot have "know[n] of and disregard[ed] an *excessive risk* to inmate health and safety." Toguchi v. Chung, 391 F.3d at 1057.

indifference.

Because the undersigned has determined that there is no genuine issue of material fact regarding deliberate indifference, the court need not reach defendant's argument for qualified immunity.

Accordingly, IT IS ORDERED that defendant's motion to strike plaintiff's evidence in opposition to the motion for summary judgment (ECF No. 74) is denied in part and granted in part as addressed above.

IT IS HEREBY RECOMMENDED that defendant's motion for summary judgment (ECF No. 63) be granted, judgment be entered for defendant and this case be closed.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within twenty-one days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Any response to the objections shall be filed and served within fourteen days after service of the objections. The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

DATED: June 27, 2014

ALLISON CLAIRE
UNITED STATES MAGISTRATE JUDGE